IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JJK MINERAL COMPANY, LLC,
a Pennsylvania limited liability
company,

      Plaintiff,

v.                                            Civil Action No. 5:16-cv-00112-FPS

NOBLE ENERGY, INC.,
a Delaware corporation,
CNX GAS COMPANY LLC,
a Virginia limited liability company,
COLUMBIA ENERGY VENTURES,
LLC, f/k/a NiSource Energy Ventures,
LLC, a Delaware limited liability
company, and COLUMBIA GAS
TRANSMISSION, LLC,
a Delaware limited liability company,

      Defendants.

**RESPONSE IN OPPOSITION TO**
**DEFENDANT NOBLE ENERGY, INC.'S MOTION FOR PARTIAL DISMISSAL**

In its Motion for Partial Dismissal, defendant Noble Energy, Inc. ("Noble") ignores its obligations to oil and gas lessors like JJK Mineral Company, LLC ("JJK") and further confirms the bad faith conduct underlying JJK's first amended complaint. [ECF No. 28]. Noble's affirmative defense of ratification may not be raised on a Rule 12(b)(6) motion to dismiss and, in any case, applies only to conduct occurring *after* knowledge of facts warranting rescission. Moreover, Noble not only agreed, in writing, that bonus payments made *prior* to its breach were *completely non-refundable*, but bonus payments are entirely irrelevant to Noble's failure to pay JJK royalties for the production of oil and gas. Where, as here, Noble has withheld production royalty payments from JJK for no other reason than its own caprice, Noble has willfully and materially breached the underlying lease. Noble's current motion should accordingly be denied.

## I. Statement of Relevant Allegations and Facts

For purposes of Noble's Rule 12(b)(6) motion to dismiss, the relevant allegations are as follows:

1. JJK owns 155.25 net acres of oil and natural gas in Marshall County, West Virginia, including the Marcellus shale natural gas, under a tract known as the Crow Property. [First Am. Compl. ¶ 16, ECF No. 28].

2. The Crow Property is subject to a July 10, 1900, oil and gas lease originally between J.L. and Elizabeth Crow, as lessors, and L.B. Beatty, as lessee (the "Crow Lease"). [*Id.* ¶ 18].

3. JJK is a lessor under the Crow Lease, and Noble is a lessee under the Crow Lease. [*Id.* ¶¶ 19-20].

4. At Noble's request, on April 5, 2013, JJK signed an Amendment and Ratification of Oil and Gas Lease (the "Amendment") and a Supplemental Agreement to Amendment and Ratification of Oil and Gas Lease (the "Supplemental Agreement"). [*Id.* ¶ 24].

5. The Amendment and Supplemental Agreement amend the Crow Lease to, among other things, authorize pooling and unitization of the Marcellus shale formation under the Crow Property. [*Id.* ¶ 26].

6. Noble and CNX have not signed the Amendment or Supplemental Agreement. [*Id.*¶ 25].

7. Noble and CNX nonetheless have pooled and unitized the Crow Property. [*Id.* ¶ 27].

8. Noble and CNX have produced millions of cubic feet of natural gas from the Sand Hill 8 and Webster 22 North Wells, which are two separate Marcellus Shale units including the Crow Property. [*Id.* ¶¶ 27-29].

9. Noble and CNX have failed to pay JJK production royalties for the millions of cubic feet of natural gas from the Sand Hill 8 and Webster 22 North Wells. [*Id.* ¶ 30].

10. Noble's corporate representative has conceded that Noble has no right to withhold production royalties from JJK. [*Id.* ¶ 35]. Specifically, Noble's corporate representative has testified as follows:

> Q. **If [the Supplemental Agreement] is enforceable against those three parties, once Noble and CNX were notified that the Hundred Resources quiet title action is over, CNX and Noble were required to release the suspending royalties to JJK and start paying JJK regularly for royalties within 30 days of that notification?**
>
> A. I would agree they're entitled to payment under the provision No. 4 within 30 days following that adjudication in the quiet title action, upon notice.
>
> …
>
> Q. **You told me that in your view that action, holding JJK's money, violates paragraph 4 of the supplemental agreement, right?**
>
> A. JJK is entitled to their money under the terms of this agreement that we agreed to.

[Jan. 25, 2017, Noble Rule 30(b)(6) Dep. Tr. 52:14-25, 53:19-25 (objections omitted), attached in relevant part as **Exhibit A**].[1]

11. Noble has materially breached the Crow Lease. [Compl. ¶ 62, ECF No. 28].

Notably, Noble has asserted additional facts in its motion to dismiss that are neither pleaded in JJK's first amended complaint nor incorporated therein by reference. Noble has, for

---

[1] The cited deposition testimony of Noble's corporate representative is expressly referenced in JJK's first amended complaint and may be considered by the Court on a Rule 12(b)(6) motion to dismiss. *See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009).

3

example, made allegations regarding the effect of prior quiet title litigation on its obligation to pay royalties. [Mem. In Support of Def. Noble Energy, Inc.'s Mot. For Partial Dismissal, at *3, ECF No. 32 (citing *JJK Mineral Co., LLC v. Hundred Res., Inc.*, 5:14-cv-9 (N.D.W. Va. Jan. 22, 2014))]. Although this quiet title litigation is public record of which the Court may take judicial notice, more serious are Noble's allegations regarding the amount, and JJK's receipt of, a signing bonus as consideration for its execution of the Amendment and Supplemental Agreement. [*Id.*]. These allegations are not found within JJK's first amended complaint, but they form the basis for Noble's arguments regarding ratification.

## II.     Legal Standard

Under a Rule 12(b)(6) motion to dismiss, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A complaint must "state a claim to relief that is plausible on its face;" that is, "the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Id.* at 256 (citation omitted).

## III.    Argument

Noble's motion to dismiss should be denied because it raises matters that may not be considered on a Rule 12(b)(6) motion to dismiss; because JJK has not taken any action to ratify the Crow Lease *after* learning of Noble's breach; because JJK has not repudiated the Crow Lease and, in any case, is not obligated to return bonus payments as a prerequisite to doing so; and because JJK has pleaded facts to support its claim for punitive damages and attorneys' fees.

A.  *Noble's affirmative defense of ratification may not be raised on a Rule 12(b)(6) motion to dismiss*.

Ratification is an affirmative defense that cannot be considered on a Rule 12(b)(6) motion to dismiss *unless* the relevant facts clearly appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). At most, JJK's first amended complaint references a $1,500 per acre signing bonus in the attached Supplemental Agreement, but the facts upon which Noble relies for its affirmative defense of ratification – the amount ($232,875.00) and timing of the payment (April 2, 2013) – are outside the four corners of the complaint. The arguments in Noble's Rule 12(b)(6) motion to dismiss based on the affirmative defense of ratification must accordingly be denied. [*See* Mem. In Support of Def. Noble Energy, Inc.'s Mot. For Partial Dismissal *5-9, ECF No. 32].

B.  *Noble's bonus payment to JJK cannot support an affirmative defense of ratification.*

Assuming, *arguendo*, that JJK's first amended complaint contains the requisite allegations regarding the amount and timing of Noble's bonus payment to JJK, that bonus payment cannot support an affirmative defense of ratification. First, Noble expressly agreed that the bonus payment was "completely non-refundable." Second, JJK's acceptance of the bonus payment predated knowledge of facts warranting rescission and thus could not, as a matter of law, form the basis for the affirmative defense of ratification.

1.  Noble expressly agreed that the bonus payment was non-refundable.

JJK's Supplemental Agreement with Noble is unambiguous with respect to JJK's right to any bonus payment received. Paragraph 3 of the Supplemental Agreement provides for a $1,500 per acre signing bonus and states that "said signing bonus is not subject to Lessor's oil and gas ownership and is completely non-refundable." [*See* Ex. C to First Am. Compl., ECF No. 28-3]. Moreover, Paragraph 4 provides that "if Lessor [JJK] is found to have either a reduced interest or

no ownership in all or any part of the property subject to the above referenced Lease Amendment and Ratification, Lessor shall be entitled to retain the signing bonus in its entirety referenced in Paragraph 3 above." [*See id.*]. Under the plain language of the Supplemental Agreement, therefore, JJK has not ratified Noble's breach by failing to return the bonus payments because those payments were *non-refundable* and earned when delivered.

    2.    <u>JJK's acceptance of the bonus payment predated its knowledge of facts warranting rescission.</u>

In its brief, Noble cites *Hamilton v. McCall Drilling Co.*, 131 W. Va. 750, 754, 50 S.E.2d 482, 484-85 (1948) for the principle of ratification, but it misses entirely the significance of the court's definition. [Mem. In Support of Def. Noble Energy, Inc.'s Mot. For Partial Dismissal *5-6]. In *Hamilton*, the court held that "[o]ne who has accepted benefits under a contract, or exercised dominion over property acquired thereunder *after knowledge of facts warranting rescission*, ratifies the agreement." *Id.* (emphasis added). Here, JJK's acceptance of the April 2, 2013, bonus payment predated any knowledge of Noble's willful, bad faith conduct, and so cannot support an affirmative defense of ratification.

C.    *<u>JJK has not repudiated the Crow Lease but is rather seeking to hold Noble to account for its material breach.</u>*

In its motion to dismiss, Noble makes the remarkable assertion that JJK has failed to repudiate the Crow Lease.[2] This assertion is so remarkable because repudiation is defined as "[a] contracting party's words or actions that indicate an intention not to perform the contract in the future; a threatened breach of contract." BLACK'S LAW DICTIONARY 1418 (9th ed. 2011). And, if any party may be said to have repudiated the Crow Lease, it is Noble, which refused to sign the

---

[2] Noble refers to JJK's alleged failure to repudiate the Amendment and Supplemental Agreement due to its mistaken belief that JJK has not challenged the validity and enforceability of the Crow Lease. [Mem. In Support of Def. Noble Energy, Inc.'s Mot. For Partial Dismissal *5, ECF No. 32]. Because JJK in fact seeks a declaration that "…the Crow Lease is void, terminated, and rescinded," due to Noble's material breach, JJK will refer more broadly to the Crow Lease. [First Am. Compl. Count III (Wherefore), ECF No. 28].

Amendment and Supplemental Agreement; refused to acknowledge the Amendment and Supplemental Agreement as valid and enforceable until August 9, 2016; and has continued to refuse to pay JJK production royalties that are due and owing. [First Am. Compl. ¶¶ 25, 34, ECF No. 28 (refusal to sign and acknowledge Amendment and Supplemental Agreement); Mem. In Support of Def. Noble Energy, Inc.'s Mot. For Partial Dismissal *4 n. 2, ECF No. 32 (refusal to pay production royalties)].

In any case, Noble misapprehends the nature of JJK's requested relief. JJK is not seeking to repudiate the contract in the sense that it is manifesting an intention not to perform. *See* BLACK'S LAW DICTIONARY 1418. Rather, JJK is seeking remedies for *Noble's* continued refusal to pay the production royalties that are undeniably due and owing. Under West Virginia law, JJK did not repudiate the Crow Lease by bringing a cause of action for declaratory judgment and, even if it had, JJK has filed its action timely and absent any requirement to repay bonus payments that were earned when received.

> 1. <u>JJK has not repudiated the Crow Lease by bringing a cause of action for declaratory judgment.</u>

Noble's argument regarding repudiation presupposes that JJK has done so by filing a cause of action for declaratory judgment. This, however, is not the case. Under West Virginia law, repudiation "must be positive, absolute and unequivocal." *Mollohan v. Black Rock Contracting, Inc.*, 160 W. Va. 446, 451, 235 S.E.2d 813, 816 (1977) (defining the related concept of "anticipatory breach"). A declaratory judgment action seeking to define the rights and obligations of the parties simply does not qualify as a positive, absolute, and unequivocal breach – particularly when it is predicated upon Noble, rather than JJK's, refusal to perform its obligation.

Indeed, the Supreme Court of Pennsylvania reached this precise conclusion in *Harrison v. Cabot Oil & Gas Corp.*, 631 Pa. 268, 110 A.3d 178 (2015). In *Harrison*, Cabot argued that the primary term of its lease with the Harrisons had been equitably extended by the period during which the Harrisons' unsuccessful action to invalidate their lease had been pending. *Id.* at 270, 110 A.3d at 179-80. Cabot argued that the Harrisons' filing of a declaratory judgment action constituted a repudiation of the lease. The *Harrison* court disagreed, holding that "[i]t is widely recognized … that the filing of declaratory judgment action merely contesting the validity or scope of an agreement does not entail such an unequivocal refusal to perform." *Id.* at 278, 110 A.3d at 184-85. "[T]he mere pursuit of declaratory relief challenging the validity of a lease does not amount to such [repudiation]." *Id.* at 280, 110 A.3d at 186.

The law cited by the *Harrison* court is in accord with West Virginia law requiring an unequivocal breach or refusal to perform. This Court accordingly should hold that JJK's filing of a declaratory judgment action does not constitute a repudiation of the lease and deny Noble's motion to dismiss.

  2. <u>JJK has acted promptly in bringing its cause of action for declaratory judgment.</u>

Prior to filing this action, JJK repeatedly asked Noble to state whether it considered the Amendment and Supplemental Agreement to be valid and enforceable. [First Am. Compl. ¶ 34, ECF No. 28]. Noble refused to respond, and JJK accordingly sought relief for misappropriation, conversion, unjust enrichment, and an accounting in its original complaint. [*Id.* ¶ 33]. It was not until Noble filed its answer to that complaint on August 9, 2016, that Noble alleged that JJK's claims were barred by the "gist of the action" doctrine and thus tacitly took the position that the Amendment and Supplemental Agreement are valid and enforceable. [*Id.* at ¶ 34]. Thus, to the extent that JJK did not earlier bring its cause of action for declaratory judgment, it is because

Noble refused to state its position regarding the existence of a contractual relationship between the parties. Noble cannot complain of a delay that it itself created, and Noble's arguments regarding untimeliness fail as a result.

  3. <u>The case law cited in Noble's motion to dismiss is distinguishable.</u>

Noble argues that JJK cannot seek a declaration that the Crow Lease is void unless it first returns the bonus payment. [Mem. In Support of Def. Noble Energy, Inc.'s Mot. For Partial Dismissal *7-10, ECF No. 32]. Because JJK has not done so, Noble contends that JJK has ratified the Crow Lease. [*Id.* at *10]. Noble's theory of "failure of repudiation as ratification," however, appears primarily in the context of acts that are voidable or void *ab initio*. Syl. *Payne Realty Co. v. Lindsey*, 91 W. Va. 127, 112 S.E. 306 (1922) (principal ratifies unauthorized act of his agent); *Berardi v. Meadowbrook Mall Co.*, 212 W. Va. 377, 384, 572 S.E.2d 900, 907 (2002) (agreement alleged to be voidable for economic duress); *McCary v. Monongahela Valley Traction Co.*, 97 W. Va. 306, 125 S.E.2d 92 (1924) (agreement alleged to be voidable for fraudulent inducement). The cases cited by Noble in support of its repudiation argument arise in this context, as well. JJK, however, has not alleged that the Crow Lease was voidable or void *ab initio*, but rather that it is invalid due to Noble's material breach in wrongfully refusing to pay production royalties that are due and owing.

With a single exception, each case cited by Noble in support of repudiation argument concerns a settlement and release agreement arising in the context of an allegedly voidable act. *Berardi*, 212 W. Va. at 384, 572 S.E.2d at 907 (attempt to set aside a settlement and release of commercial claims allegedly voidable for economic duress); *McCary*, 97 W. Va. 306, 125 S.E.2d 92 (attempt to set aside a settlement and release for personal injuries allegedly voidable for, among other things, fraudulent inducement); *Crawford v. Ridgely*, 143 W. Va. 210, 100 S.E.2d

665 (1957) (attempt to set aside a settlement and release for personal injuries allegedly voidable for mental incompetency); *Fleming v. US Postal Serv.*, 27 F.3d 259 (7th Cir. 1994) (attempt to set aside a release of employment discrimination claims allegedly voidable for mental incompetency). The remaining case cited by Noble is a 1935 probate decision from the California Supreme Court in which an oil and gas lease was held void due to its execution by an improperly-appointed special administrator.

     a. *Unlike the repudiating parties in the settlement and release cases, JJK had earned the bonus payment when received and is not the breaching party.*

  Settlement and release agreements are typically bilateral agreements in which one or more parties has continuing responsibilities beyond the execution of the contract. One party (the defendant) makes a cash payment to another party (the plaintiff) in exchange for the plaintiff's promise to dismiss and release its claims. The consideration paid by the defendant is thus directly tied to the plaintiff's promise to forego pending or further legal action. By contrast, in this matter, JJK's performance was complete when it executed the Amendment and Supplemental Agreement. JJK was not obligated to any future performance to secure its right to the bonus; the bonus was earned when received.

  Additionally, the parties seeking repudiation in the settlement and release agreement cases cited by Noble were the *breaching* parties. Here, on the other hand, JJK is the *non-breaching* party. Thus, to the extent that JJK has received any benefit from Noble, it has been attributable to JJK's own performance under the Crow Lease, Amendment, and Supplemental Agreement.

> b. *Unlike in the California probate decision cited by Noble, JJK is not claiming that the Crow Lease was void* ab initio *but rather that Noble has materially breached it.*

In the case of *Texas Co. v. Bank of Am. Nat. Trust & Savings Ass'n*, the California Supreme Court affirmed the decision of the intermediate appellate court, which held that the improper appointment of a special administrator for an estate voided an oil and gas lease and required return of a bonus payment. 5 Cal. 2d 35, 53 P.2d 127 (1935). Even assuming that a 1935 probate decision from the California Supreme Court has any remaining bearing in California, it has no bearing here. JJK is not arguing that the Crow Lease was void *ab initio*, as was the case in the *Texas Co.* matter, but rather that Noble has materially breached the agreement so as to frustrate its essential purpose.

D. *JJK has pleaded a cause of action for breach of the duty of good faith and fair dealing.*

West Virginia has imposed special obligations upon oil and gas lessees for more than 100 years, and these are the duties of good faith and fair dealing that form the basis for JJK's third cause of action. In *Grass v. Big Creek Development Co.*, the Supreme Court of Appeals defined an oil and gas lessee's duties as follows:

> The owner of a lease for the production of oil and gas, containing the usual terms and conditions, must, if either mineral is found in paying quantities on the lands, exercise due and reasonable diligence in prosecuting operations thereunder *for the mutual benefit of himself and his lessor*; and, if he unreasonably fails or refuses so to do, damages therefor are recoverable against him in an appropriate action at law.
>
> The judgment of an operator of such lease, as to the diligence with which and extent to which wells should be drilled thereunder, upon discovery of either mineral in paying quantities, will control, *if exercised in good faith and not unreasonably or arbitrarily to promote his own peculiar benefit, to the manifest prejudice of the lessor*. Both are bound by that degree of diligence which, surrounding circumstances and conditions being considered, would reasonably be expected of operators of ordinary prudence, experienced and engaged in the same business, *having due regard for the interests and advantage of themselves and their lessors*.

11

Syl. Pts., 75 W. Va. 719, 84 S.E. 750 (1915) (emphasis added).

By wrongfully withholding production royalties from JJK, Noble has acted "unreasonably [and] arbitrarily to promote his own peculiar benefit, to the manifest prejudice of [JJK]" and is subject to damages for the breach of its duties. *Id.* JJK accordingly has pleaded sufficient facts to support a cause of action for breach of the duty of good faith and fair dealing, as articulated in *Grass*, that is imposed upon oil and gas lessees operating in West Virginia.

E.  *JJK has pleaded sufficient facts to state a plausible claim for punitive damages and attorneys' fees.*

It is true that punitive damages are generally not available in an action for breach of contract absent an independent, intentional tort. *Goodwin v. Thomas*, 184 W. Va. 611, 614, 403 S.E.2d 13, 16 (1991). Nonetheless, the Supreme Court of Appeals of West Virginia has not established a bright-line rule prohibiting punitive damage awards in contract actions. Instead, the Supreme Court of Appeals has held that the gravamen of a plaintiff's entitlement to punitive damages under West Virginia law is whether the defendant has committed "an intentional wrong, or where there are circumstances which warrant an inference of malice, willfulness, or wanton disregard of the rights of others." *Id.* (citing *Addair v. Huffman*, 156 W. Va. 592, 195 S.E.2d 739, 743 (1973)). Where, as here, Noble has knowingly and wrongfully withheld production royalties to which it concedes JJK is entitled, it has acted malicious, willfully, and wantonly so as to justify punitive damages.

In addition, Noble's conduct is independently actionable as attempted extortion prohibited by W. Va. Code § 61-2-13. As Noble concedes in its motion to dismiss, it has held the production royalties to which JJK is entitled "in suspense *pending Plaintiff re-signing / providing an original signature on the Amendment and Supplemental Agreement.*" [Mem. In Support of

12

Def. Noble Energy, Inc.'s Mot. For Partial Dismissal *4 n. 2 (emphasis added)]. That is, despite acknowledging that it has no legal right to hold JJK's production royalties in suspense, Noble has refused payment with the express purpose of coercing JJK into executing the Amendment and Supplemental Agreement.[3] JJK accordingly has a private cause of action under W. Va. Code § 61-2-13 pursuant to both W. Va. Code § 55-7-9 (creating remedies for violation of statutes) and *Hurley v. Allied Chemical Corp.*, 164 W. Va. 268, 262 S.E.2d 757 (1980) (defining test for an implied cause of action) that independently supports its claim for punitive damages.

### IV.   Conclusion

**WHEREFORE**, for the foregoing reasons and those apparent to the Court, JJK Mineral Company, LLC, requests that the Court enter an Order denying defendant Noble Energy, Inc.'s Motion for Partial Dismissal, plus grant such other relief as the Court deems just and proper.

**JJK MINERAL COMPANY, LLC,**
 By SPILMAN THOMAS & BATTLE, PLLC

/s/ Joseph V. Schaeffer
James A. Walls (W.Va. Bar No. 5175)
Matthew P. Heiskell (W.Va. Bar No. 10389)
Joseph V. Schaeffer (W.Va. Bar No. 12088)
48 Donley Street, Suite 800 (26501)
P.O. Box 615
Morgantown, WV 26507-0615

---

[3] Q.  **If [the Supplemental Agreement] is enforceable against those three parties, once Noble and CNX were notified that the Hundred Resources quiet title action is over, CNX and Noble were required to release the suspending royalties to JJK and start paying JJK regularly for royalties within 30 days of that notification?**
A.  I would agree they're entitled to payment under the provision No. 4 within 30 days following that adjudication in the quiet title action, upon notice.

…

Q.  **You told me that in your view that action, holding JJK's money, violates paragraph 4 of the supplemental agreement, right?**
A.  JJK is entitled to their money under the terms of this agreement that we agreed to.

[Jan. 25, 2017, Noble Rule 30(b)(6) Dep. Tr. 52:14-25, 53:19-25 (objections omitted)].

304.291.7920  
304.291.7979 *facsimile*  
jwalls@spilmanlaw.com  
mheiskell@spilmanlaw.com  
jschaeffer@spilmanlaw.com

9419558

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JJK MINERAL COMPANY, LLC,**
a Pennsylvania limited liability
company,

      **Plaintiff,**

v.                                          Civil Action No. 5:16-cv-00112-FPS

**NOBLE ENERGY, INC.,**
a Delaware corporation,
**CNX GAS COMPANY LLC,**
a Virginia limited liability company,
**COLUMBIA ENERGY VENTURES,
LLC,** f/k/a NiSource Energy Ventures,
LLC, a Delaware limited liability
company, and **COLUMBIA GAS
TRANSMISSION, LLC,**
a Delaware limited liability company,

      **Defendants.**

## CERTIFICATE OF SERVICE

      I, Joseph V. Schaeffer, hereby certify that on the 11th day of April, 2017, I electronically filed the foregoing **"RESPONSE IN OPPOSITION TO DEFENDANT NOBLE ENERGY, INC.'S MOTION FOR PARTIAL DISMISSAL"** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

                Timothy M. Miller
                Matthew S. Casto
                Briana J. Marino
                BABST CALLAND CLEMENT & ZOMNIR, P.C.
                300 Summers Street
                BB&T Square, Suite 1000
                Charleston, WV 25301
                *Counsel for Defendant*

                                  /s/ Joseph V. Schaeffer
                                  Joseph V. Schaeffer (W.Va. Bar No. 12088)
                                  48 Donley Street, Suite 800 (26501)
                                  P.O. Box 615
                                  Morgantown, WV 26507-0615

                                          304.291.7920  
                                          304.291.7979 *facsimile*  
                                          jschaeffer@spilmanlaw.com