IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JJK MINERAL COMPANY, LLC,
a Pennsylvania limited
liability company,

    Plaintiff,

v.                                       Civil Action No. 5:16CV112
                                                  (STAMP)

NOBLE ENERGY, INC.,
a Delaware corporation,
CNX GAS COMPANY, LLC,
a Virginia limited liability company,
COLUMBIA ENERGY VENTURES, LLC,
f/k/a NiSource Energy Ventures, LLC,
a Delaware limited liability company,
and COLUMBIA GAS TRANSMISSION, LLC,
a Delaware limited liability company,

    Defendants.

**MEMORANDUM OPINION AND ORDER
CONFIRMING PRONOUNCED ORDER OF THE COURT
GRANTING IN PART AND DENYING IN PART
DEFENDANT NOBLE ENERGY, INC.'S
MOTION FOR PARTIAL DISMISSAL,
GRANTING DEFENDANT CNX GAS COMPANY, LLC'S
MOTION FOR PARTIAL DISMISSAL AND
DENYING DEFENDANT COLUMBIA VENTURES, LLC'S
MOTION FOR PARTIAL DISMISSAL**

      This is a breach of contract and declaratory judgment suit arising out of an oil and gas lease known as the "Crow Lease." The defendants have filed separate motions for partial dismissal of Counts II and III under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motions are granted as to Count II and denied as to Count III.

## I. Background

The Crow Lease covers the oil and gas rights to land in Marshall County, West Virginia. The plaintiff, JJK Mineral Company, LLC ("JJK"), is the lessor, defendants Columbia Energy Ventures, LLC, and Columbia Gas Transmission, LLC (collectively "Columbia") are the lessees, and defendants Noble Energy, Inc. ("Noble"), and CNX Gas Company LLC ("CNX") are sublessees. The Crow Lease did not originally include a pooling or unitization clause.

In 2013, Noble approached JJK to amend the Crow Lease to include pooling rights. That April, JJK executed two documents, the Amendment and Ratification of Oil and Gas Lease ("the Amendment") and the Supplemental Agreement and Ratification of Oil and Gas Lease ("the Supplement"). The Amendment modified the lease to include pooling rights and increased JJK's royalty interest to 15%. The defendants did not sign the Amendment. The Supplement was a contract between JJK, CNX, and Noble providing that CNX and Noble would pay JJK $1,500 per net acre as a non-refundable signing bonus when JJK executed the Amendment. It also provided that Noble and CNX would suspend royalty payments until JJK cleared its title to the Crow Lease in a West Virginia civil action that was pending at the time. That civil action has now been resolved in JJK's favor. Neither Noble nor CNX executed the Supplement. That Fall, Noble notified JJK that CNX and Columbia did not agree with the

terms of the Amendment and Supplement and that they refused to execute them.

Nevertheless, Noble and CNX then pooled the Crow Lease into two units, the Sand Hill 8 Unit and the Webster 22 North Unit. They drilled wells on these units and began producing natural gas. The defendants have not paid any royalties to JJK for that production, even after JJK cleared its title. Further, JJK alleges that Noble and CNX have intentionally withheld royalty payments in an attempt to force JJK into executing versions of the Amendment and the Supplement that are more favorable to the lessees. JJK alleges that Noble admitted at its Rule 30(b)(6) deposition that it had no right to withhold royalties after title was cleared, and JJK alleges that CNX is bound by this admission as a joint venturer with Noble.

JJK originally filed this civil action against only Noble for misappropriation and conversion, unjust enrichment, and for an accounting. JJK then amended its complaint to add CNX and Columbia as defendants. JJK now alleges claims for willful breach of the Crow Lease (Count I) and breach of good faith and fair dealing under the Crow Lease (Count II) against Noble and CNX, and a request for a declaration that the Amendment and the Supplement are invalid, that the defendants do not have pooling rights, that the defendants owe royalties to JJK, and that the Crow Lease has been rescinded by willful breach (Count III). JJK also requests an

accounting of all unpaid royalties (Count IV). Noble filed a motion to dismiss Counts II and III (ECF No. 31), CNX filed a motion to dismiss Count II (ECF No. 37), and Columbia filed a motion to dismiss Count III (ECF No. 42).

On May 26, 207, the parties appeared before this Court for oral argument on the motions to dismiss. At oral argument, this Court granted Noble and CNX's motions to dismiss as to Count II and denied Noble and Columbia's motions to dismiss as to Count III. This memorandum opinion serves to confirm this Court's pronounced order.

## II. Applicable Law

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff is plausibly entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." Hall v. DirectTV, 846 F.3d 757, 765 (4th Cir. 2017). "[C]ourts must accept as true all of the factual allegations contained in the complaint

and draw all reasonable inferences in favor of the plaintiff." Id. "[A] complaint is to be construed liberally so as to do substantial justice." Id. (internal quotation marks omitted).

III. Discussion

A. Count II - Breach of Duty of Good Faith and Fair Dealing

Noble and CNX each seek dismissal of Count II in separate motions. They argue that West Virginia does not recognize independent claims for breaches of implied covenants. After initially challenging this assertion in response to Noble's motion to dismiss, JJK concedes in its response to CNX's motion to dismiss that Count II must be dismissed.

Indeed, West Virginia does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing. Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 578 (W. Va. 2013). Rather, such claims "sound[] in contract," id., and may be construed as breach of contract claims if they "cover matters not identical to those specified in [other breach of contract claims]." Highmark W. Va., Inc. v. Jamie, 655 S.E.2d 509, 514 (W. Va. 2007).

In Count II, JJK alleges that Noble and CNX breached their implied duties of good faith and fair dealing by willfully withholding royalties without cause. That is the same conduct JJK alleges in Count I in its breach of contract claim. Thus, Count II is a duplicative breach of contract claim that must be dismissed.

5

The defendants also argue that JJK's request for punitive damages and attorneys' fees in Count II must be dismissed, and JJK asks this Court to read those requests into Count I. As this Court stated at oral argument, Count II is dismissed in its entirety, including JJK's request for punitive damages and attorneys' fees. If JJK wishes to seek such damages under Count I, it may file a motion for leave to amend its complaint.

B. <u>Count III - Declaratory Judgment</u>

Count III requests a declaration that the Amendment and the Supplement are invalid, that the defendants do not have pooling rights, that the defendants owe royalties to JJK, and that the Crow Lease has been rescinded by material breach. Noble and Columbia each seek dismissal of Count III for failure to state a claim.

JJK states two distinct claims. First, JJK claims that the Amendment and the Supplement are not enforceable because they are not fully formed contracts. JJK therefore seeks a declaration that the Amendment and Supplement have no force and that the defendants, therefore, have no pooling rights.

"The elements of a contract are an offer and an acceptance supported by consideration." <u>Dan Ryan Builders, Inc. v. Nelson</u>, 737 S.E.2d 550, 556 (W. Va. 2012). The offer and acceptance "may be by word, act[,] or conduct that evince the intention of the parties to contract." <u>New v. GameStop, Inc.</u>, 753 S.E.2d 62, 70-71 (W. Va. 2013). Further, the parties' conduct must demonstrate

6

their "mutual assent," meaning the parties must "hav[e] the same understanding of the terms of the agreement reached." Id. at 71.

JJK alleges sufficient facts to support a finding that a contract was not formed when JJK executed the Amendment and the Supplement. JJK alleges that Noble expressed the defendants' intent to not be bound by the terms of the agreements because they "balked at some of the language [and] . . . would not sign the documents until the language was changed." ECF No. 28 at 5. Thus, taking as true JJK's allegations, the parties did not mutually assent to the terms of the Amendment or the Supplement and no contract was formed.

The defendants argue that JJK cannot seek to repudiate the Amendment or Supplement because JJK retained a signing bonus paid as part of the Supplement and, thus, ratified the contracts. However, repudiation and ratification apply only to voidable contracts, which would otherwise be valid and enforceable. See Restatement (Second) of Contracts § 7 cmt. e (1981) (noting that a contract is voidable where "the transaction is valid and has its usual legal consequences until the power of avoidance is exercised"). JJK does not claim the Amendment and Supplement are voidable. Rather, JJK claims that they were never contracts to begin with. While JJK's receipt and retention of the signing bonus may later be relevant to factual determinations regarding contract formation, taking JJK's complaint as true, no contract was formed.

7

Second, JJK claims that the Crow Lease has been rescinded due to the defendants' material breach. Essentially, JJK seeks a declaration of equitable forfeiture of the Crow Lease. The defendants argue that there are no grounds for equitable forfeiture.

Generally, courts will not order the forfeiture of an oil and gas lease unless the lease terms clearly provide for forfeiture upon some default, the lease has expired, or the lessee has abandoned the lease. <u>Warner v. Haught, Inc.</u>, 329 S.E.2d 88, 95 (W. Va. 1985). However, forfeiture is permitted where, "instead of working a loss or injury contrary to equity, [forfeiture] promotes justice and equity and protects the owner against the indifference, laches, and injurious conduct of the lessee." <u>Warner</u>, 329 S.E.2d at 96. Thus, the West Virginia Supreme Court of Appeals has permitted equitable forfeiture for the breach of a lease in "case[s] of extraordinary hardship," <u>Allen v. Colonial Oil Co.</u>, 115 S.E. 842, 844 (W. Va. 1923), including a lessee's "fraudulent refusal of . . . development[]" or fraudulent efforts "to deprive [the lessor] of compensatory returns from her lands," but only if damages would not provide a sufficient remedy. <u>Jennings, v. S. Carbon Co.</u>, 80 S.E. 368, 370-71 (W. Va. 1913).

Further, "forfeiture . . . is disfavored based upon concerns rooted in the high costs of exploration and development conjoined with the vesting of land-use rights." <u>St. Luke's United Methodist</u>

8

Church v. CNG Dev. Co., 663 S.E.2d 639, 646 (W. Va. 2008). Thus, partial rescission has been permitted as to portions of the lease not being worked, as a less severe remedy for a lessee's breach of the implied covenant of development. See St. Luke's United Methodist Church v. CNG Dev. Co., 663 S.E.2d 639, 646-47 (W. Va. 2008).

JJK alleges the defendants are withholding royalties to extort JJK into executing an amendment to the Crow Lease with terms that would be more favorable to the lessees. The defendants admit JJK is entitled to the royalties. In fact, Noble's corporate representative admitted as much in his deposition conducted under Federal Rule of Civil Procedure 30(b)(6). Thus, the question is whether the intentional withholding of royalties admittedly owed in an attempt to extort a favorable amendment to the lease constitutes the sort of fraudulent breach causing extreme hardship that would warrant equitable forfeiture.

The West Virginia Supreme Court of Appeals has not directly considered this issue. The court has previously concluded that fraudulent refusals to develop a lease, resulting in drainage, may be a sufficient ground for equitable forfeiture. Jennings, 80 S.E. 368, 370. The court has also concluded that a simple failure to make timely rental payments is not sufficient to permit forfeiture. Warner, 329 S.E.2d at 95-96; see also Wellman v. Bobcat Oil & Gas, Inc., 524 F. App'x 26, 32-33 (4th Cir. 2013) (applying West

Virginia law). However, the court also held that "an oil and gas lessee's repeated failure to pay rentals on time, thereby forcing the lessor to repeatedly seek relief under [West Virginia Code § 36-4-9a], may permit a finding that the indifference, laches or injurious conduct of the lessee justifies a declaration of equitable forfeiture of the leasehold." Warner, 329 S.E.2d at 96. Further, in an unpublished opinion, the court has noted that forfeiture for nonpayment may be grounds for forfeiture if the failure to pay was "willful[] or the delay in payment [was] unreasonably long" and the breach "caused irreparable injury." Wilhelm v. Jay-Bee Prod. Co., No. 15-07568, 2016 WL 5941934, *3 (W. Va. Oct. 13, 2016). Regardless, the court has made clear that equitable forfeiture may be appropriate where a lessee's willful breach creates such hardship to the lessor that damages alone are not an adequate remedy.

Based on this precedent, this Court believes the West Virginia Supreme Court of Appeals, if presented with the issue, would conclude that the bad-faith refusal to pay royalties admittedly owed in an effort to extort a favorable renegotiation of the lease's terms is the sort of fraudulent, injurious conduct that would justify a declaration of equitable forfeiture or partial recision. Thus, at this early stage, this Court finds that equitable forfeiture or partial recision may be an appropriate remedy. Further, this Court finds that JJK has sufficiently

alleged circumstances of extreme hardship for which damages alone would not remedy the defendants' breach. However, this Court makes no conclusions regarding the ultimate appropriateness of forfeiture or partial recision as a remedy or whether damages would be sufficient to remedy any breach and those issues will be determined if need be after these proceedings have matured.

## IV. Conclusion

For the above reasons, Noble's motion for partial dismissal (ECF No. 31) is GRANTED IN PART and DENIED IN PART, CNX's motion for partial dismissal (ECF No. 37) is GRANTED, and Columbia's motion for partial dismissal (ECF No. 42) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    June 20, 2017

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE